**Appeal No. 24-13307-F**

————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

————————————

**SHANNON WALLER, JR.**

**Appellant,**

**v.**

**BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GA, et al**

**Appellees.**

————————————

On Appeal from the United States District Court for the Middle District of Georgia

————————————

**APPELLANT'S OPENING BRIEF**

Lisa Durham Taylor
Georgia Bar No. 235529
STEMBRIDGE TAYLOR LLC
3651 Mars Hill Road, Suite 2900B
Watkinsville, Georgia 30677
678-269-0402
lisa@stembridgetaylor.com

*Counsel for Appellant*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1-1 and 27-1(a)(10), Appellee Shannon Waller Jr., by and through his undersigned counsel of record, identifies the following alphabetically-ordered list of trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party, according to information presently available.

Blake, Christopher (Appellee)

Board of Regents of the University System of Georgia (Appellee)

Brown, Jasmine (Appellee)

Carr, Christopher (Counsel for Appellees)

Chalmers, Roger A. (Counsel for Appellees)

Cordew, Shanoya (Appellee)

Cusimano, Ellen (Counsel for Appellees)

Hall, Victor (Appellee)

Kang, Jason H. (Counsel for Appellees)

Lawson, Beck & Sandlin (Law Firm of Trial Counsel for Appellant)

Maestas, Holly A (Trial Counsel for Appellant)

i

McGraw, Christopher (Appellee)

Middlebrooks, Morgan (Appellee)

Miller, Teri (Appellee)

Pinkston-Pope, Loretta (Counsel for Appellees)

Spears, Marina (Appellee)

Stembridge Taylor LLC (Law Firm of Appellate Counsel for Appellant)

Taylor, Lisa D. (Appellate Counsel for Appellant)

Treadwell, Marc T. (U.S. District Judge)

Waller Jr., Shannon (Appellant)

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant would welcome the opportunity to present his position on appeal via oral argument but believes the issues presented are straightforward and governed by established law that plainly requires reversal of the District Court's decision to dismiss his claims.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS .................................................................................iv

TABLE OF CITATIONS ................................................................................vi

JURISDICTIONAL STATEMENT .....................................................................1

ISSUES PRESENTED FOR REVIEW ...............................................................2

STATEMENT OF THE CASE ..........................................................................3

    I.      Factual Background. ......................................................................3

         A.  Waller's Acceptance of MGSU's Admission Offer and its Program Terms. ....................................................................3

         B.  Waller's Disabilities and MGSU's Knowledge of Them. ........................5

         C.  MGSU's Removal of Waller from the Respiratory Therapy Degree Program On the Eve of His Completion of All of its Requirements and the Procedural Defects in That Process. ...........................................6

    II.    Procedural History. ......................................................................9

SUMMARY OF THE ARGUMENT ...................................................................10

ARGUMENT ..............................................................................................12

    I.    Procedural Standards and Standard of Review. ........................................12

    II.   The District Court Erred by According MGSU Sovereign Immunity Without Considering How Waller's MGSU Admission Letter and the Respiratory Therapy Program Student Handbook, Each Alone or Both Together, Constitute a Valid Written Contract Under Applicable Georgia Law. .....................................................15

A.  Waller's Acceptance of MSGU's Signed Admission Offer Letter Formed a Written Contract............................................................18

B.  MGSU and Waller Formed a Valid Written Contract Through the Respiratory Therapy Program Handbook.............................................19

C.  Either the Admission Offer Letter, the Program Handbook, or Both Constitute Written Contracts Sufficient to Waive Sovereign Immunity Under Georgia Law. ............................................................20

III.  Waller Sufficiently Alleged Disability Discrimination Under the ADA and RA.......................................................................................31

CONCLUSION. ......................................................................................38

CERTIFICATE OF COMPLIANCE ....................................................40

CERTIFICATE OF SERVICE...............................................................40

# TABLE OF CITATIONS

**Cases**

*Andrews v. City of Hartford*, 700 F. App'x 924 (11th Cir. 2017) ..........................42

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................12, 13, 14, 38

*Baker v. City of Madison, Alabama*, 67 F.4th 1268 (11th Cir. 2023) ....................12

*Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012) .................................................31

*Barnes v. Zaccari*, 757 F. Supp. 2d 1313 (N.D. Ga. 2010)........................27, 28, 30

*Barreth v. Reyes 1, Inc.*, No. 5:19-CV-00320-TES, 2020 WL 4370137
    (M.D. Ga. July 29, 2020).....................................................................................14, 42

*Bd. of Regents of the Univ. Sys. of Georgia v. Doe*, 278 Ga. App. 878
    (2006) ..................................................................................................16, 18, 26

*Bd. of Regents of Univ. Sys. of Georgia v. Barnes*, 322 Ga. App. 47 (2013)
    ...............................................................................................................29, 32

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................12, 13, 15

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072 (11th Cir. 2007).............................35

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271 (11th
    Cir. 2009)............................................................................................................15

*Dabbs v. Key Equip. Fin., Inc.*, 694 S.E.2d 161 (Ga. Ct. App. 2010)....................25

*Davis v. Carter*, 555 F.3d 979 (11th Cir. 2009) ......................................................13

*Davis v. Scheuer*, 468 U.S. 183 (1984) .............................................................14, 42

*Dep't of Pub. Safety v. Justice*, 320 Ga. 149 (2024) .................................. 17, 22-26

*Doe v. Emory Univ.*, No. 1:20-cv-2002-TWT, 2021 WL 358391 (N.D. Ga.
    Jan. 22, 2021) .....................................................................................................31

*Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288 (11th Cir. 2003) .............................................................................................. 13

*Georgia Lottery Corp. v. Patel*, 349 Ga. App. 529, (2019) ..................................... 17

*Hammond v. Ga. Dep't of Juvenile Justice*, No. 1:21-CV-210-TWT, 2021 WL 6751922 (N.D. Ga. Sept. 16, 2021)........................................................ 17, 18

*Jones v. Georgia Dep't of Cmty. Health*, No. 1:20-CV-3225-CAP-WEJ, 2021 WL 2593637 (N.D. Ga. June 21, 2021) ...................................................... 40

*Jones v. Georgia Dep't of Cmty. Health*, No. 21-12498, 2022 WL 4462036 (11th Cir. Sept. 26, 2022) ................................................................ 36, 38, 40, 41

*Kuritzky v. Emory Univ.*, 294 Ga.App. 370, (2008) .................................................. 30

*Lasile v. Syneos Health US, Inc.*, No. 1:22-CV-2472-TWT-JKL, 2022 WL 22380890 (N.D. Ga. Oct. 11, 2022) ...................................................................... 41

*Life Chiropractic Coll., Inc. v. Fuchs*, 176 Ga.App. 606 (1985) ............................ 31

*Mathews v. Clark Atlanta Univ., Inc.*, No. 1:17-CV-2963-MLB, 2023 WL 2229670 (N.D. Ga. Jan. 13, 2023)........................................................................ 29

*McCarthy v. City of Cordele, Georgia*, 111 F.4th 1141 (11th Cir. 2024)............... 14

*McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251 (S.D. Fla. 2006)..................................................................................................... 31

*McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244 (11th Cir. 2007) ................................................................................................ 15, 16

*Morehouse Coll., Inc. v. McGaha*, 277 Ga. App. 529 (2005) .................................. 30

*Nicholl v. Bd. of Regents of Univ. Sys. of Georgia*, 706 F. App'x 493 (11th Cir. 2017)............................................................................................................. 13

*Patrick v. Board of Regents of the University System of Georgia*, 358 Ga. App. 546 (2021). ............................................................................................... 33

*Pinder v. John Marshall Law School, LLC*, 11 F. Supp. 3d 1208 (N.D. Ga. 2014)................................................................................................................ 18, 20

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)...........................................................14, 42

*Silberman v. Miami Dade Transit*, 927 F.3d 1123 (11th Cir. 2019).......................35

*Williams v. Bd. of Trustees of the Univ. of Alabama*, 128 F.4th 1208 (11th Cir. 2025)..................................................................................................12

*Williams v. Corp. of Mercer Univ.*, 542 F. Supp. 3d 1366 (M.D. Ga. 2021) ..................................................................................................................18, 30

*Williamson v. Tucker,* 645 F.2d 404 (5th Cir.1981)................................................15

**Statutes**

28 U.S.C. § 1291 ......................................................................................................1

28 U.S.C. § 1331 ......................................................................................................1

28 U.S.C. § 1367 ......................................................................................................1

42 U.S.C. § 1983 ...................................................................................................1, 9

Americans With Disabilities Act, 42 U.S.C. § 12131 *et seq.*...................................9

Rehabilitation Act, 29 U.S.C. § 794.........................................................................9

## JURISDICTIONAL STATEMENT

The District Court properly exercised subject-matter jurisdiction over Plaintiff-Appellant's claims under 42 U.S.C. § 1983 and under the Americans With Disabilities Act and Rehabilitation Act because those claims present federal questions under 28 U.S.C. § 1331. The District Court dismissed Plaintiff-Appellant Shannon Waller's claim for breach of contract for lack of subject matter jurisdiction upon concluding (erroneously, as explained below) that Middle Georgia State University ("MGSU"), a member of Defendant Board of Regents of the University System of Georgia ("USG"), had not waived its sovereign immunity by entering into a valid contract with Waller. Plaintiff-Appellant contends that the District Court can properly exercise supplemental subject-matter jurisdiction over that claim under 28 U.S.C. § 1367, however, because the facts as pled are sufficient to support a waiver of sovereign immunity under the governing law.

This Court has jurisdiction under 28 U.S.C. § 1291 over all of the issues raised in this appeal because this is a timely appeal from the District Court's entry of final judgment on September 18, 2024 (Doc. 85), which rendered final its dismissal of all USG Defendants on March 26, 2024[1] (Doc. 60).

---

[1] At the time the District Court entered the order of dismissal challenged here, there were other defendants who remained active in the case – Houston Healthcare System, Inc., Houston Hospitals, Inc. and five other individuals associated with those entities (Morales, Wann, Salley, Rogers, and Burns) (collectively, the

## ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court erred when it dismissed Waller's breach of contract claim against the USG based on sovereign immunity despite the existence of at least two documents that qualify as valid written contracts under Georgia law so that the USG has waived immunity for its breach of those contracts.

2.    Whether the District Court erred in dismissing Waller's ADA and RA claims by requiring more factual allegations than are necessary to support an inference of liability for disability discrimination under prevailing federal pleading standards.

---

"Houston Defendants"). The District Court entered a final judgment after Plaintiff's claims against the Houston Defendants were resolved and dismissed.

## STATEMENT OF THE CASE

### I.    Factual Background. [2]

A.    Waller's Acceptance of MGSU's Admission Offer and its Program Terms.

Plaintiff-Appellant Shannon Waller aspired to become a respiratory therapist. (Doc. 37 ¶ 1.[3]) He therefore applied for admission to the Respiratory Therapy Entry-Level Degree Program at Middle Georgia State University and received an acceptance letter on June 8, 2020, offering him a spot in the entering class for the fall of 2020 (the "Admission Offer Letter"). (Doc. 37 ¶ 24; Doc. 37-2.) The Admission Offer Letter, signed by individual Defendant Teresa J. Miller as Chair of the Respiratory Therapy program at MGSU, informed Waller of his tentative acceptance into the program "conditional upon [his] successfully completing the prerequisites" set forth in the MGSU academic catalog, advised him of the terms under which he would be required to proceed if he accepted the offer including attendance at mandatory orientation and agreement to certain additional "important information" in an attached document, and inviting him to accept the offer of

---

[2]    The facts set forth herein come entirely from Plaintiff's Second Amended Complaint filed in the District Court on August 25, 2023 (Doc. 37) (hereinafter, the "Complaint"), and these facts must be accepted as true under the governing standards on review of the District Court's 12(b)(6) dismissal, as explained below, *infra* § I.

[3]    References to the record use the abbreviation "Doc." to refer to the docket number assigned by the District Court, followed by the page number of the document noted in the ECF header. *See* 11th Cir. R. 28-5.

admission by signing and returning a copy of the letter "as [his] commitment to begin Fall Semester 2020." (Doc. 37-2.) The Admission Offer Letter went on to state that, with respect to the attached "important information regarding our program," "Your signature on this acceptance letter will serve as acceptance of the content within that document." (*Id.*) Waller executed the Admission Offer Letter by signing at the bottom on June 8, 2020, expressly "accept[ing] a position in the Fall 2020 BS Respiratory Therapy Program at Middle Georgia State University on the Macon campus." (*Id.*)

Waller matriculated pursuant to the terms of the Admission Offer Letter on August 12, 2020, when he began studies to become a respiratory therapist. (Doc. 37 ¶ 26.) As part of his enrollment, he attended the required orientation and received and signed an acknowledgement of the MGSU Respiratory Therapy Handbook (the "Handbook"). (Doc. 37 ¶ 27.) The "Verification of Receipt of Handbook" that MGSU required him to sign included his express commitment to the terms MGSU proposed via that Handbook, as he signed under the statement, "I hereby certify that I have received a copy of the Middle Georgia State University Respiratory Therapy Handbook, have read and understand the material and will adhere to the policies." (Doc. 37-3.)

The Handbook itself consists of 31 pages authored entirely by MGSU, detailing all of the rules, requirements, and other terms and conditions with which

4

students who enroll in the program must agree to abide. (Doc. 37-4.) These include everything from clinical requirements to grading policies to attendance regulations, clinical directions, and everything in between. (*Id.*) Of particular importance here, the Handbook also includes "Academic Standards" for "Progression, Dismissal and Readmission," listing the requirements imposed by MGSU, expressly requiring students to "adher[e] to all of the policies and procedures outlined in the Respiratory Therapy Student Handbook," and stating, with respect to "Academic Misconduct," that "[Y]ou are responsible for reading, understanding and abiding by the MSC [*sic*] Student Code of Conduct," which is included in the "MGA Student Handbook." (Doc. 37-4 at 5-6.) Nowhere does the Handbook imply, much less expressly state, that it is not intended to be binding or disclaim contractual force. (Doc. 37-4.)

B.    Waller's Disabilities and MGSU's Knowledge of Them.

Waller has been diagnosed with attention deficit disorder ("ADD"), anxiety and depression. (Doc. 37 ¶ 36.) Various agents of MGSU were well aware of Waller's conditions and commented to one another about them from time to time. For example, in February 2021, Alexis Pope, a clinical instructor, communicated to Defendant Miller that Waller "display[ed] a sort of nervous anxiety" and noted other behaviors. (Doc. 37 ¶ 32.) A year later in February 2022, Ms. Pope again communicated to Defendant Miller as well as Defendant Jasmine Brown, also a professor of Waller's, her opinion that Waller made "some inappropriate statements

5

during his clinical rotations that is making the staff uncomfortable." (Doc. 37 ¶ 33.) Throughout that time, Defendants Miller and Brown discussed their feelings related to Waller's anxiety and depression, including his use of a counselor, both among themselves and with other members of the MGSU community. (Doc. 37 ¶¶ 35-36.) These conversations led to MGSU requesting that Waller provide documentation from a "licensed psychiatrist or psychologist … certifying that [he] is not a danger to [him]self or others and that [he] is able to withstand the stress of participation in a collegiate environment and clinical setting." (Doc. 37 ¶ 38.) Waller complied with all of MGSU's requests in this regard, and throughout that entire time period, he continued to successfully complete the requirements of his degree program. (Doc. 37 ¶¶ 39-41.) Although MGSU agents made negative reference to Waller's disabilities, they did not impact his ability to advance in the program until, all of a sudden, they led to his removal. (*Id.*)

   C.   MGSU's Removal of Waller from the Respiratory Therapy Degree Program On the Eve of His Completion of All of its Requirements and the Procedural Defects in That Process.

In the spring of 2022, Waller was enrolled in a clinical externship course at Houston Medical Center, RESP 4125, successful completion of which would fulfill the final requirements of the degree program and render Waller eligible for state licensing as a respiratory therapist. (Doc. 37 ¶¶ 42-43.) However, beginning on or about April 21, 2022, when Waller raised concerns about the decision of a Houston

employee to use what he believed to be the wrong size cannula on a patient with a tracheotomy, a series of events unfolded that led to Waller's removal from the entire program, terminating his eligibility to complete the degree or obtain his state license. (Doc. 37 ¶ 44.) When Waller raised concerns about the size of the cannula used on the patient, certain Houston Medical Center employees or agents took issue with his doing so. (Doc. 37 ¶¶ 44-56.) These Houston employees, who were also well aware of Waller's disabilities, perceived him as disabled and therefore deemed him, in their minds, unable to complete his duties properly and accurately. (*Id.*) Due to their negative views about his disabilities and their beliefs that those conditions interfered with his work as a respiratory therapist, the Houston employees reported Waller to MGSU and barred him from returning to Houston. (Doc. 37 ¶¶ 54-56.) In response, Defendant Miller (MGSU Respiratory Therapy program director), who was also aware of Waller's disabilities and had commented negatively on them, suspended him indefinitely from his clinical rotation at Houston pending final determination in a hearing. At the time of his removal, he was four clinical days short of completing RESP 4125, which is all that he needed to graduate and become eligible for state licensing. (Doc. 37 ¶¶ 42-43.)

The series of events that followed included a hearing and multiple levels of appeal, but at every stage, MGSU failed to adhere to its own policies or to provide Waller the required process that he was due and instead took deliberate action aimed

7

at removing him from the program due to his disabilities. To begin with, the charge letter that Waller received from MGSU pursuant to the student disciplinary procedures to which he agreed in the Handbook failed to clearly inform him of the infractions of which he was accused. (Doc. 37 ¶¶ 59, 69.) During the hearing, Waller plainly stated that he did not understand the charges against him, but MGSU's hearing officer, Defendant Cordew, forced him to change his response so that the hearing could proceed. (Doc. 26-6 at 9:19-13:03.[4]) MGSU then proceeded to take, consider, and decide upon evidence pertaining to accusations of which Waller had never been properly apprised as required by MGSU's policies and procedures while refusing to ask questions that he requested, and then issued a decision that was internally inconsistent and seemingly contradictory to evidence presented at the hearing, which had been conducted in such a way as to muddle together all evidence related to events that occurred on three or more different dates. (Doc. 37 ¶¶ 64-81.) The entire hearing proceeded based on information and testimony from the "Complainants," Defendants Miller and Brown, who, as referenced above, were the same individuals who harbored discriminatory bias toward Waller based on his disabilities. (Doc. 37 ¶¶ 36-37, 65.) The end result, after all possible appeals were exhausted, was that MGSU issued and upheld a grade of "F" for Waller in RESP

---

[4]    Docket 26-6 is a recording of the student disciplinary hearing that led to Waller's removal from the MGSU program, which the District Court deemed incorporated into Waller's Second Amended Complaint. (Doc. 57.)

4125, which was tantamount to his complete removal from and ineligibility to re-enter the respiratory therapy program. (Doc. 37 ¶ 82.) The process that led to this adverse result failed to comply with numerous policies and procedures in the MGSU Student Code of Conduct, to which Waller was required to agree in accepting admission to the program and acknowledging the Student Handbook.[5] (Doc. 37 ¶¶ 89-113; Docs. 37-9 & 37-10.)

## II.   Procedural History.

Waller originally filed suit in the Superior Court of Fulton County, Georgia on April 26, 2023, alleging claims for breach of contract, procedural due process violations under 42 U.S.C. § 1983, disability discrimination under Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("RA") and tortious interference with contractual relations. (Doc. 1-1.) The Board of Regents of the University System of Georgia ("USG") and the named individuals associated with it (Defendants Cordew, Miller, Brown, Middlebrooks, Blake and McGraw (the "Individual USG Defendants," collectively with USG, the "USG Defendants"), along with the other defendants identified in the original complaint, removed to the United States District Court for the Northern District of Georgia. (Doc. 1.) That court later transferred the

---

[5]    As explained below, the specific ways that MGSU violated its procedures is not directly relevant to this appeal but rather goes to the merits of Waller's claims to be addressed on remand upon a reversal by this Court.

case to the Middle District of Georgia. (Doc. 20.) After the USG Defendants moved to dismiss, Plaintiff sought and obtained leave to file a Second Amended Complaint (Doc. 37), and the USG Defendants moved to dismiss again (Doc. 40). The District Court granted the USG Defendants' Motion on March 26, 2024, dismissing all of the USG Defendants from the lawsuit. (Doc. 60.) On September 11, 2024, Plaintiff Waller and the remaining defendants filed a motion seeking their voluntary dismissal (Doc. 83), which the District Court granted (Doc. 84). The District Court entered a final judgment the following day (Doc. 85), from which Waller filed a timely notice of appeal to this Court (Doc. 87), directed to the dismissal of the USG Defendants in the Order at Doc. 60.

## SUMMARY OF THE ARGUMENT

This Court should reverse the District Court's dismissal of Waller's claims for breach of contract and disability discrimination under the ADA and RA and remand the case so that the parties can proceed to discovery. The District Court erred in dismissing the breach of contract claim by focusing solely on whether three different writings referenced by Waller in his Complaint are sufficiently contemporaneous to comprise one unified contract, without considering each document on its own or the possibility that just two of them might be sufficiently contemporaneous. The existence of a valid written contract between Waller and MGSU (without regard to such contract's terms) constitutes a waiver of the State's sovereign immunity under

10

Georgia law. The allegations in the Complaint together with the exhibits incorporated into it identify at least two documents that meet this requirement. Specifically, Waller entered into a contract with MGSU when he accepted the terms of his admission offer letter that was replete with statements of obligation and commitment and satisfied all contract-formation requirements under Georgia law. Either as part of that same transaction or separately, Waller also agreed to abide by the terms of the Respiratory Therapy Program Handbook, including MGSU's Student Code of Conduct, by signing a verification of receipt and commitment to comply on the very same terms offered by MGSU. The District Court never addressed these documents separately, considered that they meet contract-formation requirements alone or together, or referenced any of the many cases applying Georgia law to find immunity waivers under similar circumstances. The District Court therefore erred in dismissing based on sovereign immunity, which error requires reversal.

The District Court also erred in dismissing the ADA and RA claims by applying a heightened pleading standard in contravention of applicable federal law. The District Court concluded that Waller's Complaint failed to allege sufficient facts to establish a causal connection between his disability and the adverse action taken against Waller (*i.e.* his removal from the MGSU respiratory therapy program). In so holding, the District Court required more factual content than is proper under the

11

prevailing pleading standards pronounced in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Waller's Complaint meets those standards by alleging sufficient facts to permit the court to infer liability, and the District Court's decision to the contrary should be reversed.

## ARGUMENT

### I.  Procedural Standards and Standard of Review.

All of the issues presented in this appeal are subject to *de novo* review. *See Williams v. Bd. of Trustees of the Univ. of Alabama*, 128 F.4th 1208, 1213 (11th Cir. 2025) ("We review de novo both issues pertaining to subject matter jurisdiction and a district court's denial of a motion to dismiss on sovereign immunity grounds."); *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023) (reviewing *de novo* district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim); *Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009) (applying *de novo* standard of review to district court's grant of motion to dismiss on grounds of qualified immunity); *see also Nicholl v. Bd. of Regents of Univ. Sys. of Georgia,* 706 F. App'x 493, 494 (11th Cir. 2017) ("The grant or denial of a state's sovereign immunity defense is an issue of law subject to *de novo* review." (citing *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1290 (11th Cir. 2003)).

Although the order of dismissal challenged here involved two procedural rules – Federal Rules of Civil Procedure 12(b)(1) as to Waller's claim for breach of contract and 12(b)(6) as to his claims under § 1983, the ADA and the RA – the applicable procedural standards are essentially identical. A complaint challenged for failure to state a claim under Rule 12(b)(6) is subject to the familiar pleading standards set forth in the Supreme Court's seminal cases *Ashcroft v. Iqbal* and *Bell Atl. Corp. v. Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible on its face when it pleads the factual content necessary to draw the reasonable inference that the defendant is liable for the alleged conduct. *Id*. Thus, "[a] complaint states a claim if its factual allegations permit a 'reasonable inference' that the defendant is liable." *McCarthy v. City of Cordele, Georgia*, 111 F.4th 1141, 1145 (11th Cir. 2024).

The 12(b)(6) standard sets the bar fairly low, testing only whether the allegations are sufficient to move forward to discovery and not whether the plaintiff is likely to ultimately prevail. *See Barreth v. Reyes 1, Inc.*, No. 5:19-CV-00320-TES, 2020 WL 4370137, at *3 (M.D. Ga. July 29, 2020) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984)) ("The issue to be decided when considering a motion to dismiss is not

13

whether the claimant will ultimately prevail, but 'whether the claimant is entitled to offer evidence to support the claims.'"). "In fact, a complaint 'may proceed even if it strikes a savvy judge that actual proof of [its] facts is improbable, and that a recovery is very remote and unlikely.'" *Id*. at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, (2007)).

A facial challenge to subject matter jurisdiction under Rule 12(b)(1) must likewise be decided solely on the allegations in the complaint. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). Similar "safeguards … to those retained when a Rule12(b)(6) motion to dismiss for failure to state a claim is raised" apply, whereby the court must accept all of the plaintiff's factual allegations as true. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.1981)). Dismissal is only appropriate where the complaint fails to allege a sufficient basis on which the court can exercise jurisdiction. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) ("A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.").

14

**II.    The District Court Erred by According MGSU Sovereign Immunity Without Considering How Waller's MGSU Admission Letter and the Respiratory Therapy Program Student Handbook, Each Alone or Both Together, Constitute a Valid Written Contract Under Applicable Georgia Law.**

The District Court dismissed Waller's breach of contract claim based solely on its holding that no valid written contract could possibly exist between Waller and MGSU, but its very brief analysis erroneously focused only on whether the three primary documents to which Waller pointed were sufficiently close in time to be "contemporaneous" and failed to consider that each of those documents, whether alone or taken together, can readily support the existence of the requisite contract under established Georgia law. (Doc. 60 at 13-15.) MGSU sought dismissal of Waller's breach of contract claim based solely on a claim of sovereign immunity. (Doc. 40-1 at 6-11.) The USG, as an arm of the State, enjoys sovereign immunity under Georgia law, but that immunity has been waived as to any action based on breach of a written contract. Ga. Const. of 1983, Art. I, Sec. II, Par. IX; *Bd. of Regents of the Univ. Sys. of Georgia v. Doe*, 278 Ga. App. 878, 881 (2006). The question for the District Court was thus whether Waller has shown the existence of a written contract with MGSU on which his claim is based. *Dep't of Pub. Safety v. Justice*, 320 Ga. 149, 153 (2024).

General principles of contract law govern the inquiry into the existence of a written contract for purposes of this immunity waiver, and no special requirements

15

apply. *Justice*, 320 Ga. at 154. The waiver includes "*any* written contract…and is not limited to formal, traditional signed contracts." *Hammond v. Ga. Dep't of Juvenile Justice*, No. 1:21-CV-210-TWT, 2021 WL 6751922, at *1 (N.D. Ga. Sept. 16, 2021) (citing *Georgia Lottery Corp. v. Patel*, 349 Ga. App. 529, 531 (2019)). The essential elements that must exist are straightforward: "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." *Justice*, 320 Ga. at 154 (quoting O.C.G.A. § 13-3-1). Moreover, the contract need not be embodied in a single writing but rather may be comprised of "multiple signed, contemporaneous agreements between the parties which demonstrate their intent to enter into a binding contract …[where] the individual documents, considered together, include all of the necessary terms of a contract." *Bd. of Regents of the Univ. Sys. of Georgia v. Doe*, 278 Ga. App. 878, 881 (2006). A formal signature is also not necessary as long as there are other indicia of assent. *Hammond*, 2021 WL 6751922, at *1 ("Signatures are not required to form a written contract because '[a]ssent to the terms of a contract may be given other than by signatures.' ").

The Complaint shows a written contract entered into between MGSU and Waller under these governing standards so that the District Court's dismissal was in error. As a threshold matter, the university-student relationship is inherently

16

contractual in nature. *Williams v. Corp. of Mercer Univ.*, 542 F. Supp. 3d 1366, 1373 (M.D. Ga. 2021) *(citing Pinder v. John Marshall Law School, LLC*, 11 F. Supp. 3d 1208, 1266 (N.D. Ga. 2014)). Waller's relationship with MGSU is no different. Specifically, Waller alleges that he entered a binding contract with MGSU when he signed and returned his written Admission Offer Letter into the Respiratory Therapy Entry-Level Degree Program, which letter was signed by MGSU and sought Waller's commitment to the program subject to all of its governing policies and pertinent requirements, including the Program Handbook.[6] (Doc. 37 ¶¶ 24-28; Doc. 37-2.) The Program Handbook, which expressly incorporates the terms of the MGSU Code of Conduct, either formed part of the same contract as the Admission Offer Letter, or, alternatively constitutes a separate and independent contract between Waller and the institution. Either way, the Complaint adequately establishes a valid written contract sufficient to waive the State's sovereign immunity, and the District Court's decision to the contrary constitutes reversible error.

---

[6]   The Complaint also refers to the Constitution of the Student Government Association of Middle Georgia State University signed by MGSU's President Blake on November 1, 2021. (Doc. 37 ¶ 29.) While this Constitution could potentially be relevant to Waller's claims on remand and may form yet another binding contract between Waller and MGSU, it is not necessary to consider that document in order to find the existence of a valid written contract sufficient to constitute a waiver of sovereign immunity and to reverse and remand the case back to the District Court on that basis.

A.   Waller's Acceptance of MSGU's Signed Admission Offer Letter Formed a Written Contract.

Taking first the Admission Offer Letter on its own, the letter meets all of the basic requirements to be a valid contract under Georgia law: both Waller and MGSU were able to contract, consideration included MGSU's provision of educational services to Waller in exchange for Waller's enrollment and compliance with the program's requirements, MGSU and Waller both expressly assented by signing, and there was a subject matter upon which that contract could operate, *i.e.* Waller's enrollment in the MGSU Respiratory Therapy program. (*Id.*; *see also id.* ¶ 119 (referencing acceptance letter and Program Handbook in breach of contract count)). The Admission Offer Letter also contains multiple statements reflecting intention to be bound by its terms and that are otherwise contractual in nature – it refers to a mandatory orientation program, requires Waller's agreement to additional "important information" in an attachment stating that "<u>Your signature on this acceptance letter will serve as acceptance of the content within that document,</u>" and invites Waller's acceptance by providing that returning a signed copy of the letter comprises "your commitment to begin Fall Semester 2020." (Doc. 37-2 (emphasis in original).) The District Court apparently never considered, much less analyzed, how that letter meets the basic requirements of a contract under Georgia law, and its order of dismissal should be reversed on that basis alone. (*See* Doc. 60 at 13-15 (offering no analysis of the admission letter's contractual force other than to

18

conclude summarily that the documents proffered by Waller fail to comprise "contemporaneous writings").

B.    MGSU and Waller Formed a Valid Written Contract Through the Respiratory Therapy Program Handbook.

Both in addition to and separate from the admission letter, Waller's Complaint also establishes that he entered into a written contract with MGSU through the Respiratory Therapy Program Handbook, whether as part of the transaction of his enrollment at MGSU initiated by his acceptance of the University's offer of admission, or separately and independently. Shortly after signing and returning the admission offer letter, Waller signed an acknowledgement accepting the terms of the Respiratory Therapy Program Handbook. (Doc. 37, 37-3, 37-4.) The "Verification of Receipt of Handbook" that Waller signed contained additional terms of contractual commitment, whereby Waller agreed by signing that he had "read and understand the material and will adhere to the policies." (*Id.*) That Handbook contained detailed program requirements and standards, and although it was not itself signed by any agent of the University, it was provided to Waller as part of his enrollment as contemplated in the admission letter and proposed by MGSU for Waller's acceptance. Notably, the Handbook does not contain any express or implied statement disclaiming contractual force but instead is replete with mandatory language. (Doc. 37-4.) And, the parties' course of conduct throughout the proceedings that led up to Waller's dismissal from MGSU's program as alleged in

19

detail in the Complaint further reflects MGSU's treatment of those policies and procedures as binding (even if, as Waller alleges, MGSU did not comply with them).

C.     Either the Admission Offer Letter, the Program Handbook, or Both Constitute Written Contracts Sufficient to Waive Sovereign Immunity Under Georgia Law.

These facts are amply sufficient under the governing law to establish a valid contract for purposes of waiver of the State's sovereign immunity. Perhaps most relevant here is the recent decision of the Georgia Supreme Court in *Dep't of Pub. Safety v. Justice*, 320 Ga. 149, 153 (2024), decided in October 2024 *after* the District Court's Order challenged here. In *Justice*, the plaintiff sued his state employer, the Georgia Department of Public Safety ("DPS"), for breach of his employment contract based on an alleged failure to pay overtime under the Fair Labor Standards Act ("FLSA"). *Justice*, 320 Ga. at 149. The contract on which Justice's claims were based was embodied in an email sent by the DPS Director of Human Resources, offering Justice employment as a Trooper Cadet and to participate in an upcoming Georgia State Patrol Trooper School. *Id.* at 151. It included Justice's starting salary and start date and referenced a number of additional prerequisites, conditioning the offer on fulfilling them. *Id.* Justice responded to the email stating "I accept this offer" and, a few days later, he received, signed and returned some additional documents including a Policy Acknowledgement Form and two documents referencing "FLSA Compensatory Time." *Id.*

20

The DPS moved to dismiss Justice's breach of contract lawsuit based on the same argument on which the USG relied in the District Court here – that the plaintiff could not establish a waiver of sovereign immunity because the documents presented did not comprise a valid written contract. *Id.* at 152. The trial court granted the DPS's motion, but the Court of Appeals reversed, concluding that " '[b]ased on the contemporaneously executed documents exchanged between Justice and DPS, both physical and electronic, ... the parties entered into a contract for at-will employment that included certain FLSA provisions' and, thus, that 'DPS waived sovereign immunity for Justice's breach of contract claim related to those agreements, and the trial court erred by finding otherwise.' " *Id.* at 152.

The Georgia Supreme Court granted a writ of certiorari to review the Court of Appeals' decision and provided important instruction about the proper scope of inquiry into the existence of a valid written contract for purposes of assessing a possible waiver of sovereign immunity on a state defendant's motion to dismiss. The holding consists of two parts. First, the court held that the email exchange between Justice and the DPS HR Director comprised a valid written contract sufficient to waive sovereign immunity because "[e]ach of the essential elements of a contract [was] present in writing." *Id.* at 154. Specifically, the parties were able to contract and expressed their assent, there was consideration in the promised salary in exchange for employment, and there was a subject matter on which the contract

21

could operate, *i.e.* Justice's employment. *Id.* at 154-55. Thus, the parties' execution of the offer letter *alone* was sufficient to waive the state's sovereign immunity. *Id.*

While the Georgia Supreme Court upheld the Court of Appeals' finding of a valid contract, it found error in the Court of Appeals' decision, concluding that it had gone too far in addressing whether that contract included a term requiring the DPS to comply with the FLSA. That question, the Supreme Court held, went to the merits of the plaintiff's claim and "thus was not relevant to sovereign immunity and was not appropriate to consider on a motion to dismiss based on an asserted lack of subject-matter jurisdiction." *Id.* at 155. In other words, the mere *existence* of a valid written contract is all that is required to waive sovereign immunity, while the *terms* of that contract go to the merits of the underlying claims and are not a proper consideration in the immunity-waiver inquiry.

The court's decision in *Justice* compels a finding that MGSU cannot avoid liability on a claim of sovereign immunity because the allegations in the Complaint are sufficient to establish that MGSU entered at least one, if not multiple, valid written contracts with Waller. As explained above, the admission letter offered by MGSU and accepted by Waller meets all of the requirements of a valid written contract under Georgia law – assent, ability to contract, consideration, and contract-worthy subject matter. Because that letter expressly requires acceptance of other pre-admission terms and requirements, one of which was indubitably the Respiratory

22

Therapy Program Handbook that Waller expressly acknowledged just two months later (Docs. 37-2&3), the terms of that Handbook likely form part of the same contractual transaction as the admission letter and thus comprise one and the same contract.[7] *Dabbs v. Key Equip. Fin., Inc.*, 694 S.E.2d 161, 165 (Ga. Ct. App. 2010) (noting that to be contemporaneous does not require "perfect or absolute coincidence in point of time. One thing is contemporaneous with a given transaction when it is so related in point of time as reasonably to be said to be a part of such transaction."). However, as *Justice* explains, whether the terms of the Handbook comprise part of the offer-letter contract is not a proper inquiry at this stage. That question – *i.e.* what are the terms of the parties' contract – goes to the merits of Waller's claim and is not relevant to the threshold question of the existence of a valid contract sufficient to waive sovereign immunity. Because such a contract exists here, the analysis ends, and the terms of the contract are not relevant.

---

[7]    The District Court did not conduct a hearing or otherwise accept any evidence beyond the pleadings and the attachments to it. But a court deciding a motion to dismiss for lack of subject matter jurisdiction is not confined to the pleadings (as it is under 12(b)(6)), and the cases addressing these immunity issues reflect that, quite often, the court needs to consider evidence beyond the pleadings to decide whether a valid contract exists. *See, e.g.*, *Justice*, 320 Ga. at 150 (noting that the trial court allowed limited discovery and heard evidence in relation to DPS's motion to dismiss based on its claim of sovereign immunity). At a minimum, this case should be remanded so that Waller has the opportunity to present evidence establishing the existence of a valid written contract. *Id.* (explaining that in deciding motion to dismiss on sovereign immunity grounds, trial court "is authorized to 'hear the matter on affidavits presented by the respective parties, [or to] direct that the matter be heard wholly or partly on oral testimony or depositions.'").

Moreover, the Respiratory Therapy Program Handbook itself constitutes a valid written contract between the parties, separate and apart from its likely forming a part of the admission-letter agreement (which is not a proper inquiry at this stage under *Justice*). Like the letter, the Handbook meets the requirements of a valid contract. Although it is not signed by MGSU, it was clearly presented by MGSU to Waller for his acceptance, it contains multiple terms that are contractual/obligatory in nature, and the parties' course of conduct as alleged in the Complaint reflects that both parties considered themselves bound by it. Just as with the letter, the parties clearly had the ability to contract, consideration exists in the parties' mutual interdependent promises including but not limited to Waller's agreement to abide by the rules in the Handbook in exchange for MGSU allowing him to attend school there, and Waller's participation in the respiratory therapy program comprises the obvious subject matter on which the contract can operate. *See Bd. of Regents of the Univ. Sys. of Georgia v. Doe*, 278 Ga. App. 878, 881 (2006) ("A contract may be formed … when the parties exchange mutually interdependent promises.")[8]; *Barnes*

---

[8]    The District Court rejected *Doe* as inapposite, chastising Waller for relying on it and stating that "*Doe*, if anything, scuttles Waller's argument." (Doc. 60 at 15.) The District Court, however, erroneously failed to consider how each of the key documents discussed in this brief can, whether standing alone or taken together, constitute a valid written contract under the governing law as described hereinabove, and instead focused solely on the timing of three of the documents referenced in Waller's Complaint – the admission letter signed in June 2020, the handbook acknowledgement signed two months later, and the SGA Constitution, signed by MGSU President Blake in November 2021. (*Id.* at 14.) The District Court's analysis

24

*v. Zaccari*, 757 F. Supp. 2d 1313, 1335 (N.D. Ga. 2010), *aff'd in part, rev'd in part and remanded*, 669 F.3d 1295 (11th Cir. 2012), and *vacated in part*, 592 F. App'x 859 (11th Cir. 2015) (holding that Valdosta State University Student Handbook, although unsigned by either party, constituted a valid written contract between VSU and the plaintiff student, thereby waiving sovereign immunity).

Indeed, multiple Georgia courts have found that student handbooks like the Respiratory Therapy Program Handbook at issue here are valid written contracts between the universities that promulgate those policies and the students who accept them in exchange for the opportunity to enroll. In *Barnes v. Zaccari*, the United States Northern District for the Northern District of Georgia easily concluded that Valdosta State University's Student Handbook is a valid written contract under Georgia law. 757 F. Supp. 2d at 1335. The Court's reasoning is instructive:

> (a) both BOR and Barnes are able to contract, (b) consideration was present in the form of tuition paid by Barnes along with his agreement to abide by the rules set forth in the VSU Student Handbook in return for the BOR permitting Barnes to attend VSU, (c) Barnes assented to the terms of the VSU Student Handbook (the contract), which was assented to and written by VSU, and (d) the subject matter was the agreed upon conduct and action of the two parties during Barnes's enrollment.

therefore centered on whether the writings were "contemporaneous" under Georgia law, and finding the gap from the first to the last of them too great, the District Court concluded they were not. (*Id.* at 14-15.) The District Court never considered (or at least did not cite or discuss) any of the many cases discussed above under which either the admission letter, the Respiratory Therapy Program Handbook, or both, could constitute a valid written contract sufficient to waive USG's sovereign immunity, without regard to whether they are sufficiently "contemporaneous" or not.

25

*Id.* The exact same is true here, except that in this case the contractual nature of the handbook is even more compelling because Waller signed an express acknowledgement with contractual terms in it. (Docs. 37-3, 37-4.) *But see Barnes*, 757 F. Supp. at 1334-34 (discussing VSU Handbook and according it contract status without indicating that either party ever signed it). Although this Court later reversed the District Court's conclusion that the BOR had waived sovereign immunity, it did so on different grounds (*i.e.* that the State had not consented to suit in federal court so that the Eleventh Amendment to the U.S. Constitution applied) and did not ever address the underlying analysis of the VSU Student Handbook at issue.[9]

---

[9]    After the Eleventh Circuit's ruling, the plaintiff filed a separate lawsuit in state court re-asserting his claims for breach of contract, in response to which the USG again asserted sovereign immunity. The trial court denied the USG's motion to dismiss, but the Court of Appeals reversed. With very little analysis, the Court of Appeals concluded that Barnes had not established a valid contract because he proffered "only an unauthenticated partial copy of the student code of conduct, which is not signed by either party, and a counseling center consent form, which was only signed by Barnes." *Bd. of Regents of Univ. Sys. of Georgia v. Barnes*, 322 Ga. App. 47, 50, 743 S.E.2d 609, 611 (2013), *disapproved of by Wolfe v. Boards of Regents of the Univ. Sys. of Georgia*, 300 Ga. 223, 794 S.E.2d 85 (2016). That is a far cry from what Waller presented here – a contractual offer letter signed by both parties and a complete, unchallenged student handbook.

Moreover, the documents on which Barnes relied to establish a contract were not attached to his complaint but instead were presented only as attachments, without verification, to his brief in response to the BOR's motion to dismiss. Because the court considered evidence outside the pleadings, it therefore converted the BOR's motion to one for summary judgment, which inherently raised the bar as to what the plaintiff needed to present in order to establish the state's waiver. *Id.* That is not what happened here – Waller attached all pertinent documents to the complaint, so the USG's motion had to be analyzed under 12(b)(6) standards and not the heightened

26

The *Barnes* court's holding that VSU's student handbook comprised a valid written contract between the student and the university is consistent with the great weight of case law addressing that same question, both before and since. *See Mathews v. Clark Atlanta Univ., Inc.*, No. 1:17-CV-2963-MLB, 2023 WL 2229670, at *14 (N.D. Ga. Jan. 13, 2023), *appeal dismissed*, No. 23-10569-AA, 2023 WL 9658956 (11th Cir. Aug. 16, 2023) (citing *Barnes v. Zaccari* for principle that student handbook can constitute valid, written contract where it does not contain any express contractual disclaimer); *Amin-Patel v. Emory University*, No. 1:19-CV-1213-MHC, 2021 WL 10310994, at *11-12 (N.D. Ga. Mar. 17, 2021) (analyzing plaintiff's claim for breach of contract based on university's failure to follow procedures set forth in student handbook); *Williams v. Corp. of Mercer Univ.*, 542 F. Supp. 3d 1366, 1375 (M.D. Ga. 2021) ("Under Georgia law, 'private universities in Georgia form[ ] contracts with their students via the student handbook issued during the student's enrollment' and through bulletins or catalogs."); *Morehouse Coll., Inc. v. McGaha*, 277 Ga. App. 529, 531-32 (2005) (analyzing damages recoverable on Morehouse College's breach of contract through "failure to abide by the hearing procedures in its student handbook"); *Kuritzky v. Emory Univ.*, 294 Ga.App. 370, (2008) ("Georgia law permits an expelled student to bring a breach of

---

requirements of Rule 56. To the extent the USG therefore continues to rely here on *Barnes*, as it did in the District Court, that reliance is misplaced.

27

contract action against a private educational institution for failure to abide by the hearing procedures set forth in the student handbook."); *Life Chiropractic Coll., Inc. v. Fuchs*, 176 Ga.App. 606, 607-08 (1985) (affirming summary judgment to college on breach of contract claim based on conclusion of no breach); *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1253 (S.D. Fla. 2006) (finding enforceable contract in university policies); *Doe v. Emory Univ.*, No. 1:20-cv-2002-TWT, 2021 WL 358391, at *6 (N.D. Ga. Jan. 22, 2021) (noting that course webpages can give rise to valid contractual obligations).[10]

The primary cases holding otherwise were the central ones relied upon by USG in the District Court, and both appear to be outliers and are otherwise factually and/or procedurally inapposite. (Doc. 40-1 at 9.) As explained above, *see supra* note 4 and accompanying text, *Board of Regents of the University System of Georgia v. Barnes* held that an "unauthenticated partial copy of the student code of conduct,

---

[10]    That many of these cases involve private universities rather than, as here, a public one, is not determinative of their import. Some cases involving contract claims stemming from a state university's breach of student handbook provisions are dismissed based on Eleventh Amendment immunity so that the question of contract validity is not reached. *Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012) (holding that BOR had not waived Eleventh Amendment immunity to suit in federal court because it did not voluntarily invoke federal court jurisdiction). Others, such as the *Barnes* decision when brought back in state court, involve facts that fall well short of those evidencing a binding contract in this case. In any event, it is well established that whether a valid contract exists in these situations is governed by Georgia contract law, and the requirements are the same whether the contracting entity is public or private.

which is not signed by either party, and a counseling center consent form," were not sufficient to establish a valid written contract. 322 Ga. App. at 50. The facts there, however, were markedly different in ways that matter to the contract-formation inquiry: the handbook was only partial and unsigned whereas here it was complete and signed with terms indicating contractual commitment by Waller, and the secondary document was only a counseling form and not, as here, an admission letter signed by the university full of terms of commitment. *Id.* Moreover, *Barnes* was decided as a motion for summary judgment where the authentication of the documents – a point that the court emphasized – mattered, whereas on a motion to dismiss as here it does not. *Id.* Relatedly, due to the procedural posture, the plaintiff there bore the burden of establishing a genuine dispute of fact for trial, while the Court here must accept all of Plaintiff's well-pled allegations as true without regard to what the evidence may be.  Thus, *Barnes* is of little to no relevance.

The same goes for the other case that recently denied contract status to a student handbook and on which USG also relied below, *Patrick v. Board of Regents of the University System of Georgia*, 358 Ga. App. 546, 550 (2021). *Patrick* bears some vague resemblance to this case in that the plaintiff there, as here, pointed to an admission acceptance letter as well as a student handbook to establish a valid written contract. But the facts are otherwise starkly different. In *Patrick*, none of the documents were signed, whereas here the admission letter was signed by both parties

29

and the handbook was signed by Waller. *Id.* at 548-49. Additionally, the language of the documents at issue was far less committal in nature, as the offer letter, rather than requiring a signed acceptance of its terms, was much more advisory in nature, stating only "You are responsible for familiarizing yourself with the regulations of your department of study and those of the Graduate School. You can find the Graduate School policies in the *Graduate School Catalog.*" *Id.* at 547. In finding no contract, the Court of Appeals specifically relied on that non-committal language. *Id.* at 549 ("[T]he offer letter's statement to Patrick to 'familiariz[e]' herself with the student handbooks and department regulations failed to demonstrate an intent by the Board for the student handbooks to become a binding contract."). The offer letter here is quite different. *See supra* § II.A. (detailing terms of commitment in Waller's MGSU admission letter). In short, both cases are factually distinguishable in addition to contrary to the weight of other authority interpreting Georgia contract law described above, which cases were not discussed at all in either *Barnes* or *Patrick*.

Waller's Complaint sufficiently alleges a valid written contract that supports a waiver of sovereign immunity, whether as to the Admission Offer Letter, the Respiratory Therapy Program Handbook, or both, and the District Court's order dismissing that claim for lack of subject matter jurisdiction should be reversed.

### III.  Waller Sufficiently Alleged Disability Discrimination Under the ADA and RA.

The District Court's order dismissing Waller's claims under Title II of the ADA and Section 504 of the RA contravenes the clear instruction of the Supreme Court's seminal pleading-standard cases of *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly* and must be reversed. Counts 3 and 4 of the Complaint assert claims of disability discrimination against the USG Defendants under the RA and ADA, respectively. (Doc. 37 ¶¶ 145-181.) Those two laws are very similar and, for purposes of the issues presented in this appeal can be treated together because "the same standards govern claims under both." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019).

To state a claim under either Title II of the ADA or Section 504 of the RA, a plaintiff need only allege sufficient factual matter, taken as true, to plausibly establish "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). Based on the briefing in the court below, there is no dispute among the parties either that this standard applies or that Waller's Complaint alleges facts sufficient to plausibly support the first two of these essential elements. (Doc. 40-1 at 18.) Along

31

with some other arguments that the District Court did not reach, the USG Defendants' sole basis for seeking dismissal of Waller's RA and ADA claims was that he failed to allege sufficient facts to establish the third prong, *i.e.* that the exclusion, denial of benefit or discrimination he suffered was "by reason of [his] disability" (*id.*), and it was on that sole basis that the District Court granted dismissal. (Doc. 60 at 24-27.) This was in error because the facts alleged in the Complaint satisfy the low pleading-stage bar and no authority exists supporting otherwise.

Even if Waller's Complaint is imperfect, the claims in it are facially plausible under *Twombly/Iqbal* because the facts as pled "allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Jones v. Georgia Dep't of Cmty. Health*, No. 21-12498, 2022 WL 4462036, at *1 (11th Cir. Sept. 26, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). Those factual allegations include but are not limited to the following: From early in Waller's time as a MGSU student, instructors and leaders in the Respiratory Therapy Department expressed their knowledge of Waller's disabilities and their negative impressions of him stemming from those disabilities. (Doc. 37 ¶¶ 32, 33, 35-39.) MGSU even required Waller at one point to provide medical documentation from "a licensed psychiatrist or psychologist, …certifying that [Waller is] not a danger to [him]self or others and that [he is] able to withstand the stress of participation in a collegiate environment and clinical setting…" (Doc. 37 ¶ 38.) The

32

Complaint also plainly alleges that certain key representatives of Houston Healthcare, where MGSU assigned Waller to complete clinical training, were aware of Waller's disabilities (including ADD, anxiety and depression); that, due to their opinions related to those disabilities, they "perceived that Plaintiff was unsatisfactory in his performance"; and that they "communicated their perceptions and opinions of Plaintiff's ADD, anxiety, and depression to each other and to Defendants USG…Miller [and] Brown," among others. (Doc. 37 ¶¶ 47-49.) Those negative misperceptions about Waller and his ability perform, according to his Complaint, were not only "false and unsupported by evidence" but they "were passed on to Defendants USG [and all of the Individual USG Defendants]" and "led to Plaintiff being removed from Houston Healthcare…, which led to Plaintiff being removed as a student at MG[SU]." (Doc. 37 ¶¶ 53-54.)

The facts recited above are alone amply sufficient to permit an inference that the Defendants are liable, but the Complaint supplies more. Waller's Complaint goes on to allege more specifics about how his "remov[al]" from MGSU came about, *i.e.* that he was accused of violating certain MGSU policies and eventually brought before a hearing panel in which certain of the Individual MGSU Defendants with knowledge of Waller's disabilities and who perceived him negatively as a result (Miller and Brown) "served as the complainants," and that, following a hearing that suffered numerous shortcomings as outlined in the Complaint, MGSU ultimately

33

issued him a grade of "F" in his final course without ever properly investigating the allegations against him. (Doc. 37 ¶¶ 59-82.) Based on these factual allegations, the Complaint then states in each of the respective pertinent counts that "Because of Defendants' regarding Plaintiff has having [a disability,] Defendants denied Plaintiff the opportunity to participate in and benefit from the clinical externship and educational opportunities" and that "Defendants' actions and omissions against Plaintiff were taken solely on the basis of Plaintiff's disabilities and impairments" in violation of the ADA and RA. (Doc. 37 ¶¶ 155-57 & 174-76.)

The allegations summarized above readily surpass the relatively low bar that complaints must meet under the modern *Twombly*/*Iqbal* standard because they allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," and dismissal for failure to state a claim was therefore improper. *Ascroft*, 556 U.S. at 678; *Jones*, 2022 WL 4462036, at *1. Taking all of Waller's factual allegations as true and distilling the story they tell to its core, the decisionmakers who charged him with offenses under the Student Code of Conduct that he contends were false and fabricated harbored discriminatory bias against Waller based on his disabilities, and the University ultimately carried out his removal from the Respiratory Therapy program (via the issuance of a grade of "F" in the final course as a disciplinary punishment for offenses he says he did not commit) based on the discriminatory bias of those complainants and others. Could

34

Waller have alleged his disability discrimination claims in greater factual detail? Perhaps, and maybe even definitely. Is it abundantly clear that he can prevail in proving the causation he alleges? Perhaps not, but neither significant detail nor likelihood of proof is the governing standard. Under clear Supreme Court precedents that indisputably control, all that is required is "facial plausibility," which is satisfied whenever the complaint alleges enough facts that allow the court to infer liability.

Notably, neither the USG Defendants in either of their briefs in the court below nor the District Court in its order of dismissal cited *a single case* that supports dismissal for failure to state a claim under the ADA or RA based solely on a plaintiff's failure to plead specific facts establishing causation between the plaintiff's disability and the adverse action taken against him as a result. Indeed, a thorough search of the electronic case databases revealed very few cases (other than those involving *pro se* plaintiffs) in which a district court dismissed a plaintiff's claims under the federal discrimination laws for failure to state a claim under the applicable plausibility pleading standards, much less any in which this Court concluded that such a dismissal was proper. This Court's unpublished decision in *Jones v. Georgia Dep't of Cmty. Health*, however, is instructive as to the impropriety of 12(b)(6) dismissal here.

In *Jones*, the district court dismissed the plaintiff's disability discrimination claim for failure to state a claim under Rule 12(b)(6) holding that, among other

things, she failed to allege sufficient facts to establish the requisite causal connection between her alleged disability and the termination of her employment. As to the causation element, the plaintiff made only a "conclusory assertion that '[t]he circumstances surrounding Plaintiff's termination raise a reasonable inference that it was motivated by her disability.' " *Jones v. Georgia Dep't of Cmty. Health*, No. 1:20-CV-3225-CAP-WEJ, 2021 WL 2593637, at *5 (N.D. Ga. June 21, 2021), *aff'd in part, rev'd in part and remanded,* No. 21-12498, 2022 WL 4462036 (11th Cir. Sept. 26, 2022). The district court found that this allegation was "mere speculation that cannot survive a Rule 12(b)(6) motion" because the plaintiff "made no allegation about what motivated her termination and even alleged that the defendant provided a reason unrelated to her disability" and dismissed the plaintiff's disability discrimination claim under the RA as a result. *Id.*

This Court, however, reversed, holding that, despite the lack of details, "the factual allegations in [the plaintiff's] amended complaint, accepted as true and construed in her favor, [were] sufficient to state a plausible claim for disability discrimination." *Jones*, 2022 WL 4462036, at *2. With very little analysis, this Court quickly concluded that the plaintiff's allegations were sufficient to meet the low bar of *Twombly*/*Iqbal* despite the relative dearth of facts supporting a causal connection between the plaintiff's disability and her termination because no such facts are required. It was enough that the plaintiff's "factual allegations plausibly alleged that

36

when she was terminated, she had a disability, she was otherwise qualified for her position…, and she was subjected to unlawful discrimination as a result of her disability." *Id.* Nothing further was required. *Id.*

Just like the district court in *Jones*, the District Court here erred in concluding that Waller's factual allegations are not sufficient to meet the low bar of the federal pleading standard. Like Jones, Waller's factual allegations plausibly alleged that when MGSU refused to allow him to complete his degree (of which he was a mere four clinical days short (Doc. 37 ¶ 42)), he had a disability, and that MGSU discriminated against him based on that disability in so doing. As explained above, Waller actually went much further than that, providing additional facts connecting his disability and the bias of pertinent decisionmakers to his ultimate removal. That he did not provide *more* specific details about how discriminatory bias permeated or otherwise tainted the process that led to his removal, or that he also alleged that prior to the end, MGSU had not yet taken adverse action against him (Doc. 37 ¶¶ 34, 37-40), is not a sufficient basis to deny him the opportunity to take discovery and present evidence to prove his claims. *Jones*, 2022 WL 4462036, at *2; *see also Lasile v. Syneos Health US, Inc.*, No. 1:22-CV-2472-TWT-JKL, 2022 WL 22380890, at *5 (N.D. Ga. Oct. 11, 2022), *report and recommendation adopted,* No. 1:22-CV-2472-TWT-JKL, 2022 WL 22380888 (N.D. Ga. Nov. 4, 2022) (applying reasoning and holding of *Jones* to conclude that plaintiff's allegations of disability discrimination

37

were sufficient to survive a motion to dismiss even though she did not allege specific facts establishing causation and alleged a non-discriminatory basis that could support the defendant's decision). A complaint alleging violation of a federal discrimination law "need only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,'" and Waller's Complaint did that here. *Andrews v. City of Hartford*, 700 F. App'x 924, 925–26 (11th Cir. 2017) (internal citations omitted). The District Court's Order improperly found Waller's allegations insufficient and must be reversed. *See Barreth v. Reyes 1, Inc.*, No. 5:19-CV-00320-TES, 2020 WL 4370137, at *3 (M.D. Ga. July 29, 2020) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984)) ("The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but 'whether the claimant is entitled to offer evidence to support the claims.'").

## **CONCLUSION.**

The District Court erred in dismissing Waller's breach of contract claim because his Complaint alleges a valid, written contract that is sufficient to waive the USG's sovereign immunity, at least at this stage of the proceedings, under applicable Georgia contract law. The District Court also erred in dismissing Waller's ADA and RA claims for failure to state a claim upon which relief can be granted because the allegations in the Complaint surpass the minimum requirement of pleading sufficient

facts to permit an inference of liability. This Court should reverse on both grounds and remand the case to the District Court so that the parties may proceed with discovery on Waller's claims.

Respectfully submitted this 26th day of March, 2025.

/s/ Lisa D. Taylor
Lisa Durham Taylor
Georgia Bar No. 235529
lisa@stembridgetaylor.com
Stembridge Taylor LLC
3651 Mars Hill Road, Suite 2900B
Watkinsville, Georgia 30677
Telephone: 678-269-0402

Appellate Counsel for Appellant

39

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this Brief was prepared complies with the "Type-volume limitation" contained in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains only 9,821 words, not including those parts of the Brief which are exempt under Rule 32(f), which falls below the 13,000-word limit.

*/s/ Lisa D. Taylor*
Lisa D. Taylor
Georgia Bar. No. 235529

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2025, I electronically filed this Appellant's Brief via the CM/ECF system, which will send notice to all attorneys of record. I will also file four paper copies per 11th Cir. R. 31-3 and serve two paper copies on the USG Defendants' counsel of record per Fed. R. App. P. 31(b).

Respectfully submitted,

s/Lisa D. Taylor
Lisa D. Taylor
Georgia Bar No. 235529